PETER HEWITT and ELIAS BAKER *v.* DAVID W. HULING.

1. The legal title to land was vested by deed from the vendor in A. to be held to his own use, until he was paid a certain sum of money advanced by him for B., the purchaser, after which he was to stand seised to the use of B. with the same effect, as if the title had been made directly to B.—A. brought ejectment against B. to compel payment of the moneys advanced, and judgment was confessed, to be released on payment of a certain sum in a certain time. *Held* that if payment was delayed beyond that time, A. might take possession of the land and hold it agreeably to the deed until reimbursed, and not as absolute owner of the estate.

2. The deed to A. is not properly a mortgage, but is a deed of trust, in which the *cestui que trust* has the same right which a mortgagor has against a mortgagee.

3. A. having taken possession under the judgment, is liable to account for the profits of the land, to be applied to the payment of the debt, and upon ejectment brought against him by B., it is not necessary for B. to tender his debt in money to A. before suit brought.

4. B. is entitled to recover in his ejectment against A., if the *clear* profits of the land since it came into A.'s possession amount to as much as the debt due to A.,

as settled by the confession of judgment, and interest thereon: if those profits amounted to so much *before* suit brought, he could recover unconditionally—if not to so much until *after*, he could recover on condition that he pay all the costs of the suit before taking out execution.

5. It is recommended that instead of framing the conditional verdict in ejectment, brought to compel the payment of purchase-money, so as to vest an absolute title in the vendor on the failure of the vendee to pay at the time fixed, it should contain the alternative of a *decree of sale* on such failure by the sheriff or a master, for the benefit of the vendor and vendee, and of all others having an interest in the proceeds.

Error to the Common Pleas of Blair.

*May* 24. This was an action of ejectment, brought by David W. Huling against Peter Hewitt, for whom Elias Baker was subsequently substituted as defendant. The facts are fully stated by President Black in his charge to the jury. The verdict was for the plaintiff.

*Charge of the Court below.*—" The facts of this case are briefly as follows:—Alexander Blair owned the land and devised it to his nephew, Alex. B. Buchanan, by his will, dated 21st August, 1819.

" On the 14th of July, 1832, and before Alex. B. Buchanan had attained the age of 21 years, his father, George Buchanan, with the consent of Alexander, made an agreement to sell the land to George W. Henry for $25 per acre, or $2603.75 for the tract.

" Henry paid $800 on the agreement, and there being still due thereon of principal and interest $1903.85, which he was unable to pay, he prevailed on A. P. Wilson, one of his creditors, to advance that sum for him, so that the benefit of the contract might not be wholly lost to his creditors and himself.

" On the 9th of August, 1834, Alexander B. Buchanan (being then of full age) made a conveyance of the land to A. P. Wilson, with the consent of Henry, upon trust and confidence that he (Wilson) should stand seised of the premises to his own use until he was paid or reimbursed the money advanced, with power to sell the whole or a part to raise the money advanced, and upon the further trust and confidence, that, after he was reimbursed the money so advanced, he should *stand seised of the premises to the use of George W. Henry, his heirs and assigns, with the same effect as if the title had been made directly to Henry.*

" A judgment was obtained against Henry by M. & F. Tiernan, and execution issued thereon. His interest in this land was levied and sold in January, 1835, to David Huling, the present plaintiff, who took the possession under his deed from the sheriff, in May of the same year.

" A part of the money advanced by Wilson appears to have been

paid him by Henry, soon after the date of the deed from Buchanan to Wilson. But a portion of it remaining unpaid, ejectment was brought (No. 71, Ap. T. 1836) by Wilson against Henry and Huling. On the 21st of November, 1838, the defendants confessed judgment, to be released on payment of $700 to Peter Hewitt, and $225 to A. P. Wilson, within nine months. Three days after the expiration of the nine months, Wilson assigned all his interest in the land and in the judgment to Peter Hewitt, who took out execution, and under it the sheriff put Hewitt in possession, and turned Huling out.

"After Hewitt had been in possession some time, judgments were obtained against him—executions issued, and *his* interest in the land was levied on and sold by the sheriff to Elias Baker. At the time Baker became the purchaser of the property, he had full notice of all these facts. Baker has remained in possession since April, 1844—Hewitt from 1840 to 1844. You have heard the evidence which both parties have produced to show the annual value of the land, and the profits received therefrom by the defendants.

"Baker holds the land through Hewitt under Wilson, to whom the legal title was conveyed, for certain purposes, by Buchanan. Huling claiming under Henry, asserts his right to all the equitable interest reserved to the latter by the same deed.

"It is argued by the defendants' counsel, that the judgment confessed by Huling to Wilson, and the non-compliance of the former with the terms on which it was to be released, not only justified Hewitt, the assignee of Wilson, in taking possession, but gave him the possession as absolute owner, and for ever defeated all right of Henry, or those claiming under him, to recover it back. The argument is based upon a supposed resemblance of this case to that of a' vendee, who is turned out on a conditional judgment for non-compliance with the terms prescribed.

"If a vendor brings ejectment to compel payment of the purchase-money, and recovers a judgment either by confession or on verdict conditioned, that it be released on payment of the balance due within a prescribed time, and the time is suffered to pass without payment, the vendor may take possession and keep the land as absolute owner. The vendee in such cases has his election either to consummate his contract by paying what he owes on it, or to forfeit all right under it by refusing. If he refuses, the contract of sale is wholly rescinded, and the parties are remitted to their rights and capacities, as they stood originally, to all intents and

purposes as if the agreement of sale had never been made: Gable v. Hain, 1 Penn. Rep. 264; Treaster v. Fleisher, 7 W. & S. 137.

" But I am wholly unable to believe that the relation between Gen. Wilson and George W. Henry, was at all analogous to that of vendor and vendee. The legal title to this land was vested in Wilson to secure the payment of certain money, advanced by him for Henry. He was to hold it to his own use until he was paid. This authorized him to recover in ejectment, if the money was not paid. But could he recover as the absolute owner of the whole estate? Certainly he could not recover a larger estate than the deed vested in him. Suppose the parties were remitted to their original rights. What were those rights? The deed defines them too clearly to make mistake a possible thing. The right of Wilson to hold the land until he is paid, is not more plainly set down than his obligation to restore it to Henry when the debt is satisfied. The rights and obligations of one party are as well secured as those of the other. We are therefore of opinion, that the condition appended to the judgment could mean nothing more than that Wilson would not take possession of the land, for the purposes mentioned in the deed, until the expiration of nine months, nor then if $925 should be paid him in the mean time; but, if payment was delayed beyond the nine months, then he might take possession, and hold it to his own use agreeably to his deed, until he was reimbursed what was coming to him.

" This deed is not properly a mortgage. Strictly speaking, it is a deed of trust in which the cestui que trust, or those who represent him, have the same rights that a mortgagor has against a mortgagee: 3 W. & S. 384.

"If we look upon it as a mortgage and the confession of judgment, a foreclosure upon terms agreed (as in the case of Stoever v. Stoever, 9 S. & R. 434), we must regard it as a case in which a chancellor would give the party relief; because there has been no unreasonable acquiescence in the defendants' possession, and they had the fullest notice of the present plaintiff's intention to claim his rights; no improvements have been made by the defendants, except what you can compensate them for out of the profits. The debt for which the land is pledged, in this case, is very small, compared to the value of the property; not, perhaps, more than one-sixth of what it would sell for. Equity will not permit a man, under these circumstances, to do so hard a thing as to keep property worth $6,000 for a debt of $1,000.

" The defendants, however, insist that, even on the views of the

case already given, the plaintiff cannot recover for want of having tendered the debt in money before suit brought. They deny that they are accountable for the profits of the land since they have been in possession. But we instruct you, that the law is otherwise. One who holds lands in trust for another, must account for the profits. That a mortgagee in possession must do so, every one knows. It is not the law of Pennsylvania, that a person who holds his debtor's land merely as security, and stipulates to hold it for the use of the debtor after he is paid, can keep the possession until he is paid twice over by the profits, and then demand payment again before he surrenders the property.

"The plaintiff is therefore entitled to recover, if the clear profits of the land, since the defendants have had it, amount to as much as the debt and interest due to Wilson and Hewitt, as settled by the confession of judgment. I say *clear* profits; for you must allow the defendants to recoup the value of all reasonable and necessary improvements. If you believe that the defendants received, in the shape of profits, the amount of the debt with interest thereon before this suit was brought, your verdict ought to be for the plaintiff unconditionally, and the judgment will carry costs. But if it be your opinion that the profits of the land did not amount, when the suit was brought, to as much as the $925 with interest down to that time, but that they swelled to that amount or beyond it since suit brought, your verdict ought to be for the plaintiff, on condition that he pay all the costs of this suit before taking out execution. If the clear profits do not amount to as much as the debt and interest up to this time, your verdict must be for the defendants. In making the calculation, the plaintiff is not entitled to take rests; that is, he cannot stop at the end of a year, or at the expiration of any other period, and apply the profits so as to stop the interest. The profits are only to be applied when they amount to as much as the principal and interest both."

The defendant, having excepted to the charge, in this court made the following assignment of errors.

1. The court erred by instructing the jury that the confession of judgment in the equitable ejectment, No. 71 April Term, 1836, Andrew P. Wilson against D. W. Huling and others, to be released upon the payment of the money therein stipulated to be paid with interest, within nine months—the expiration of the nine months—and the delivery of the possession of the premises by the sheriff to Hewitt, after the expiration of the time—did not prevent a recovery by D. W. Huling, the plaintiff below, and that the plaintiff was

entitled to recover if the clear profits of the land since the defendants have had it, amount to as much as the debt and interest due to Wilson and Hewitt, as settled by the confession of judgment.

2. The court misinstructed the jury from the beginning to the end of their charge, as to the legal effect of the judgment, and proceedings thereon, in the equitable ejectment, No. 71 April Term, 1836.

3. The court erred by instructing the jury that the plaintiff (D. W. Huling) was not bound to tender to the defendant, before the institution of the suit, the debt and interest provided for in the judgment in the equitable ejectment.

4. The court erred by instructing the jury that the defendants were bound to account to the plaintiff for the issues and profits of the land, to be applied to the payment of the debt, even down to the time of the trial of the cause, and that the plaintiff was entitled to recover, if the debt had been paid out of the profits at any time before the trial.

*J. G. Miles*, for the plaintiff in error.—1. The judgment in the equitable ejectment, No. 71 April Term, 1836, the non-payment of the money within the time, and the consequent proceedings upon the judgment, merged in the legal estate the equitable title of Henry, vested in Huling by virtue of the sheriff's sale of Henry's interest, and vested the whole title in Hewitt, the assignee of the judgment and vendee of Wilson: Hollingsworth *v.* Fry, 4 Dall. 347; Gable's Heirs *v.* Hain, 1 Penn. Rep. 264; Treaster *v.* Fleisher, 7 W. & S. 137; 4 Kent. Com. 102; Selby *v.* Alston, Sumner's ed. of Ves. Jr.'s Reps. 340, 341, 125; 1 Johns. Ch. 422; Preston on Estates, 32 Law Lib. p. 23.

Wilson under the deed from Buchanan had the *legal* estate— Henry had but an *equity* which could be *abandoned*, or lost by *laches*. Huling abandoned that equity by the terms of the confession of judgment, and the non-payment of the money within the time stipulated. His *contract* in the confession of judgment made *time* of its essence, and "when time enters into the essence of a contract, it must be observed:" Gable *v.* Hain, 1 Penn. Rep. 266; Hollingsworth *v.* Fry, 4 Dall. 347; Treaster *v.* Fleisher, 7 W. & S. 139.

Between this case and a case between vendor and vendee, there is a most striking analogy, if not a perfect identity. When Wilson paid the balance of the purchase-money to Buchanan for Henry, and took the deed to himself, he assumed Buchanan's position as

owner of the legal estate, and Henry never could have compelled Wilson to convey to him, but upon the payment of the balance of the purchase-money and interest due to Buchanan, advanced by Wilson and assigned by Buchanan to him by the legal operation of the deed. Henry was still the vendée, and Wilson became the assignee of the vendor.

Again: vendor and vendee, before the execution of a deed, stand in the relation of trustee and *cestui que trust*. Pipher *v.* Lodge, 4 S. & R. 315 and 569.

A judgment in an equitable ejectment extinguishes the trust by the destruction of the trust relation, not by the doctrine of *remitter* alone, but by the combined operation of the doctrines of *remitter* and *abandonment*. The vendor is *remitted* to his original rights, by the *abandonment* and *laches* with which the vendee is chargeable by the non-payment of the money within the time stipulated in the judgment. The equity of *cestui que trust* may be *abandoned* by laches and neglect: Peebles *v.* Reading, 8 S. & R. 493; Sugden, 246, &c. &c. The deed to Wilson cannot be construed stronger against him than an agreement to convey to Henry upon the repayment of the money and interest, paid by him to Buchanan. The judgment in the equitable ejectment fixed the *time*, by the agreement of the parties, for the repayment of the money, and that time was suffered to pass without the money being paid. A chancellor in such a case never would decree a conveyance.

2. The plaintiff ought not to have been permitted to recover without a tender or payment of the money and interest stipulated in the confession of judgment, No. 71 of April Term, 1836, to be paid: 8 S. & R. 497. The defendant having been put into the possession by the *judgment* and process of the *law*, he is not bound to account for the rents and profits: Heft *v.* M'Gill, 3 Barr, 263.

3. The court ought not to have instructed the jury that the account of profits could be brought down to a period *posterior* to the institution of the plaintiff's ejectment, even if the defendants were accountable for the profits of the land.

*A. P. Wilson* and *Fisher*, contrà.—Wilson received Buchanan's deed, and agreed to act under it as a trustee for the sale of the property, if necessary, to raise enough to pay the debts mentioned in the deed, and to convey the residue to Henry. This case is, in principle, like Altimus *v.* Elliott, 2 Barr, 62; Steiner *v.* Coxe, 4 Barr, 25. Mortgagee in possession liable to account: Coote, Mortgages, 320. Even after assignment, if made without assent of

Vol. XI.—5

mortgagor: Coote, 556, Ib. 355, Ib. 27; 3 Sug. Vendors, 226, cap. 19, 55: 2, No. 1, 21, 22, 23, 25; 1 Sugden, Vendors, 94, 95. Must sell for best price: 1 Sugden, 86, 89, cap. 1, 99, 6, No. 12, 13.

The deed to Wilson created only a trust for sale, Lewin, Trusts, 22; such trustee must sell for greatest benefit of *cestui que trust*, &c., Ib. 367, and cannot delegate it, Ib. 370. Agreement in breach of trust not to be enforced, Ib. 368; such trustee cannot purchase trust property, Ib. 376, 1 Saunders, Uses & Trusts, 362, directly or indirectly; must account for rents and is allowed for repairs, Ib. 382. When such trustee has sold, with *notice* by the purchaser, *cestui que trust* may have it back with rents and profits, allowing 4 per cent. to purchaser—who, if he has been in possession, is chargeable with occupative rent, Ib. 382.

Trustee's omission to do what he ought to do not to hurt *cestui que trust:* 1 Saunders, Uses & Trusts, 365; Relief on penalty, Solomon *v.* Wilson, 1 Wharton, 241.

What constitutes a mortgage: Jaques *v.* Weeks, 7 Watts, 261. As to conditional verdicts: Irvine *v.* Bull, 4 Watts, 289; Huber *v.* Burke, 11 S. & R. 244. *Cestui que trust* recovering in equity is entitled to the further relief of rents and profits: Story's Equity, §§ 512, 311, 312, 320, 321, 322. Equity will not enforce penalties: Story's Equity, § 1318, 1313 to 1317, 1319 to 1322, note 3 to § 1322, 722, 739 and seq.

As to time in equity and when not material: Story Eq. § 776, 777; Dixon *v.* Oliver, 5 Watts, 512; Youst *v.* Martin, 3 S. & R. 423; Decamp *v.* Feay, 5 S. & R. 323. Generally time is not of the essence of contract of sale: Brashear *v.* Gratz, 6 Wharton, 528, 5 Con. R. 161; Vernon *v.* Stephens, 2 P. Wms. 66.

Hiester *v.* Madeira, 3 W. & S. 384; Caldwell *v.* Woods, 3 Watts, 188; Kunkle *v.* Wolfersberger, 6 Watts, 126; Wharf *v.* Howell, 5 Binney, 499.

The opinion of this court was delivered by

ROGERS, J.—As we entirely concur in the view taken of the case by the learned judge, I might content myself with a simple recognition of the principles of the charge, but that we are desirous of drawing the attention of the profession to a defect, as we think, in the manner in which conditional verdicts are framed. If a vendor brings ejectment to compel payment of the purchase-money and moves judgment by confession, or a verdict condition that it be released on payment of the balance due within a prescribed time,

and the time is suffered to pass without payment, the vendor may take possession, and keep the land as absolute owner. It is ruled that in such cases the vendee has his election, either to consummate his contract by payment of the amount ascertained to be due, or to forfeit all right under it, by a refusal or neglect to pay. For the principle, 1 P. R. 264, 7 Watts, 137, and many other cases, may be cited. This rule is now so firmly settled, and so many titles depend upon it, that we cannot permit it to be disturbed, or even questioned. It cannot, however, be disguised, that in some cases a rigid adherence to the rule has produced injustice; for valuable property has been sacrificed from the inability or neglect of the vendee, or other cause less culpable, to comply with the exact terms of the conditional verdict. For remedy of this we would recommend a modification of the practice. Instead of framing the verdict in such way as that an absolute title vests in the vendor on failure to pay at the time fixed in the verdict, we recommend that if not paid at the time, it should contain a decree of sale, either by the sheriff or by a master under the directions of the court, for the benefit of the vendor and vendee and all other persons having an interest in the proceeds. A verdict and judgment in this shape would be attended with this decided advantage, that the vendor would in due time receive the unpaid purchase-money, and the vendee would receive the surplus, if any; and, what in my judgment is of no inconsiderable importance, the purchaser at the sale would obtain a title free from all doubt or difficulty. The sale being made under the order and direction of the court, and the money being substituted for the land, and under their control, in its distribution substantial justice may be done to all. And this course would be equitable, for in truth the action of ejectment to compel payment of the purchase-money is an equitable proceeding. The vendor and vendee stand, in some respects, in the position of mortgagor and mortgagee. There is, therefore, an analogy to a practice which has obtained in chancery, where the chancellor in some cases decrees a sale of the mortgaged premises, rather than a foreclosure of the mortgage. The usual course in England, it is true, is by bill of foreclosure; but in Ireland the practice is (and it is worthy of imitation), instead of a foreclosure to pray that the estate may be sold and the money applied in satisfaction of the encumbrance, and the surplus paid to the mortgagor. If there be a deficit, the mortgagee has his remedy for the difference: 13 Ves. Jr. 205. In certain cases also in England a decree for a sale, instead of foreclosure, may be obtained; as if a mortgage be of a dry re-

version, 1 Ch. R. 33, or if the heir of the mortgagor be an infant, 1 Vern. 295, Booth *v.* Rich, 15 Vern. 475; in which latter case, as is said, a foreclosure and a sale in the alternative should be prayed, and if a foreclosure alone be prayed, the court will, with the mortgagor's consent, refer it to a master to inquire whether it will be for the infant's benefit that a sale should be made : Marsh *v.* Moody, 1 V. & B. 223. In Coote on Mortgages, p. 510, title *Foreclosure,* other cases are cited, in which the chancellor will decree a sale, but it is unnecessary to enumerate them all, as these will suffice to indicate the practice in that country. So also in our own state, the mortgaged premises are sold on a *levari facias,* and the money is applied as in other cases on a judicial sale. Why then, it may be asked, should the action of ejectment, brought to enforce payment of the purchase-money, be an exception ? For my own part, I am unable to see any reason which will satisfactorily account for the difference. I would not wish to be understood as prescribing any particular course, for each case must rest on its own merits, taking care to mould the verdict in such form as to do substantial justice between all parties having an interest in the premises, and treating the action, as it really is, in the nature of an equitable proceeding by bill and answer. So fully impressed am I with the soundness of these views, that I am unwilling to go one step further than has been already done, in holding the estate of the vendor an absolute title to the land, and this consideration has had no inconsiderable weight on my mind, in adopting the charge of the learned Judge of the Common Pleas.

Judgment affirmed.